# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE NORTHERN DISTRICT OF WEST VIRGINIA

| | |
|---|---|
| IN RE: ) | |
| ) | |
| UNITED ENERGY COAL, INC, ) | Case No. 06-453 |
| ) | |
| Debtor. ) | Chapter 7 |
| ─────────────────────────── ) | |
| ) | |
| H. LYNDEN GRAHAM, trustee of the ) | |
| estate of UNITED ENERGY COAL INC., ) | |
| ) | |
| Plaintiff, Counter- ) | |
| Defendant ) | |
| ) | |
| v.  ) | Adv. Proc. No. 08-45 |
| ) | Administratively Consolidated with Adv. |
| ) | Proc. No. 08-38 |
| VIRGINIA ELECTRIC POWER ) | |
| COMPANY, INC. ) | |
| Defendant, Counter- ) | |
| Claimant. ) | |
| ─────────────────────────── ) | |

## MEMORANDUM OPINION

This case is before the court on two motions. First, United Energy Coal, Inc. (the "Debtor"), requests permission to amend its adversary complaint against Virginia Electric Power Company, Inc. ("VEPCO"), to include a count against VEPCO for its alleged tortious interference of a purported coal supply contract between the Debtor and Buffalo Coal Company, Inc. ("Buffalo").

Second, VEPCO seeks to dismiss Count I of the Debtor's adversary complaint, which alleges that VEPCO is liable to the Debtor for the breach of a 2005 coal supply agreement that VEPCO executed with Buffalo.

For the reasons stated herein, the court will grant the Debtor's motion to amend its adversary

complaint, and will grant VEPCO's motion to dismiss Count I.

## I. STANDARDS OF REVIEW

Regarding the Debtor's motion to amend its complaint, VEPCO does not consent to the proposed amendment. Accordingly, under Fed. R. Civ. P. 15(a)(2), the Debtor may only amend its complaint by leave of the court. The Rule instructs the court to "freely give leave when justice so requires." *Id.* The Rule is liberal, and it "gives effect to the federal policy in favor of resolving cases on their merits instead of disposing of them on technicalities." *Laber v. Harvey*, 438 F.3d 404, 426 (4th Cir. 2006) (en banc). Based on its liberal policy, a motion for leave to amend a complaint should only be denied "'when the amendment would be prejudicial to the opposing party, there has been bad faith on the part of the moving party, or the amendment would have been futile.'" *Id.* (citation omitted).

Regarding the standard of review for a motion to dismiss for failure to state a claim under Fed. R. Civ. P. 12(b)(6), a court must accept as true all of the factual allegations in the complaint as well as the reasonable inferences that can be drawn from them, and a court may dismiss the complaint "only if it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations." *Hishon v. King & Spalding*, 467 U.S. 69, 73 (1984); *see also Edwards v. City of Goldsboro*, 178 F.3d 231, 244 (4th Cir. 1999) (stating that the court may grant a motion to dismiss only if "it appears certain that the plaintiff cannot prove any set of facts in support of his claim entitling him to relief."). Demonstrating grounds for relief under Rule 12(b)(6) requires the pleader to provide more than "mere labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 127 S. Ct. 1955, 1965 (2007). The factual allegations in the complaint "must be enough to raise a right of relief above the speculative level," and the factual allegations must be enough "to raise a reasonable expectation" of liability, "even if it strikes the savvy judge that actual proof of those facts is improbable, and 'that a recovery is very remote and unlikely'" *Id.*

## II. BACKGROUND

From 1999 to 2006, the Debtor operated several surface and deep coal mines. The Debtor estimates that about half of its coal production was supplied to a power plant in Cumberland, Maryland, and the rest was supplied to other markets, and in particular, to a related company,

Buffalo,[1] who then sold that coal to other buyers. Buffalo's primary customer was VEPCO, which operated a coal burning electric power plant in Grant County, West Virginia.

To secure the supply of coal to its power station, VEPCO executed a January 1, 2002 coal supply agreement ("First Supply Agreement") with Buffalo. Problems arose between Buffalo and VEPCO regarding the First Supply Agreement, and on October 24, 2005, the parties settled their differences and executed a new coal supply agreement (the "Second Supply Agreement") that was to last for five years. In executing the Second Supply Agreement, VEPCO agreed to forego asserting its claim for $34.8 million in damages for Buffalo's alleged breach of the First Supply Agreement, so long as Buffalo performed its obligations under the Second Supply Agreement. The Debtor guaranteed Buffalo's performance under the Second Supply Agreement.

After execution of the Second Supply Agreement, the Debtor sent some of its coal to Buffalo, which Buffalo then sent to VEPCO in the performance of its obligations under the Second Supply Agreement. The Debtor also supplied some coal directly to VEPCO, which was apparently also done to assist Buffalo in discharging its performance obligations.

To monitor Buffalo's performance, VEPCO retained consultants to regularly review Buffalo's operations and finances. From time to time, VEPCO conducted telephone conference calls with Buffalo, and the Debtor participated in those meetings. According to the Debtor, VEPCO knew that it was purchasing coal from Buffalo under the Second Supply Agreement that came from the Debtor.

On February 22, 2006, VEPCO terminated the Second Supply Agreement on the grounds that Buffalo was "insolvent and unable to pay its debts as they fall due," and that it had defaulted on its delivery requirements. According to the Debtor, however, Buffalo was not insolvent, and its financial condition had been improving over the winter of 2005-06. Also, the Debtor asserts that Buffalo had not yet defaulted on its required coal shipments to VEPCO.

On March 3, 2006, VEPCO sent an invoice to the Debtor, as the guarantor under the Coal Supply Agreement, for $56,370,521, representing the contractual "termination payment" due to it.

### III. DISCUSSION

The Debtor requests permission from the court to file an amended complaint to assert a cause

---

[1] The Debtor and Buffalo are under common control through ownership interests.

−3−

of action against VEPCO for its alleged tortious interference of the Debtor's purported coal supply agreement with Buffalo. The Debtor asserts that VEPCO unjustly interfered with this purported contract when it terminated the Second Supply Agreement with Buffalo. VEPCO objects to the proposed amendment on the grounds that it was brought in bad faith, it fails to state a claim, and is barred due to the Debtor's failure to raise it as a compulsory counterclaim in earlier litigation.

VEPCO moves for a dismissal of Count I of the original complaint on the grounds that the Debtor, a third party to the Second Supply Agreement, has no legal authority to assert a claim against it for its alleged breach of the Agreement. The Debtor asserts that it has the right to sue for breach of contract in its own name on the grounds that it is an intended third party beneficiary of the Agreement.

**A.      Motion to Amend Complaint**

In the Debtor's original, one-count, complaint, it asserts that VEPCO is liable to it for breaching the Second Supply Agreement with Buffalo. The Debtor's proposed amended complaint expounds on this theory, and asserts more allegations relating to its alleged intended third party beneficiary status to the Second Supply Agreement. It also expounds on VEPCO's alleged knowledge of that relationship, and the existence of purported contracts between the Debtor and Buffalo, which were entered due to Buffalo's performance obligations in the Second Supply Agreement. The amended complaint's new count for tortious interference, the Debtor argues, merely adds an additional legal theory to facts already pled in the original complaint. These additional allegations and cause of action would have been included in the original complaint, the Debtor asserts, but it had just hired new counsel who did not have adequate time to become familiar with the relevant facts and legal issues before filing the original complaint.

VEPCO opposes the Debtor's motion to amend its complaint on the basis that: (1) the Debtor's original complaint was filed in bad faith, and that, (2) if the Debtor is allowed to file the amended complaint, Count II for tortious interference would immediately be subject to dismissal on the grounds that: (a) the Debtor does not allege that VEPCO acted with the requisite tortious intent, which would require dismissal under Rule 12(b)(6); (b) the claim is barred by the applicable statute of limitations, and (c) the claim is barred on the grounds that it constitutes a compulsory counterclaim that was not raised in earlier litigation between VEPCO and the Debtor.

**1.      "Bad Faith" Amendment**

VEPCO asserts that the Debtor's motion to amend its complaint is in bad faith on the basis that the Debtor filed its original complaint without a proper factual investigation. In particular, VEPCO points to the affidavit of Robert P. Lorea, an attorney representing the Debtor, which states that a review of the Debtor's documents and interviews with the Debtor's principals was not completed until after the Debtor filed its original complaint.

Bailey & Glasser, LLC, responds that it was hired by the Debtor near the end of an applicable statute of limitations period, and the breach of contract action alleged in the original complaint had already been investigated at the time they filed the original complaint on behalf of the Debtor.

In fact, Bailey & Glasser, LLC, was not approved to represent the Debtor in this litigation until May 2, 2008. The actionable wrongs alleged to have been committed by VEPCO occurred when it terminated the Second Supply Agreement on February 22, 2006. Because the Debtor filed its bankruptcy case on May 31, 2006, Section 108 of the Bankruptcy Code provides that the trustee may commence any action against a third party – that had not expired before the filing of the bankruptcy petition – within two years after the filing of the petition. 11 U.S.C. § 108(a)(2). That two year deadline expired on May 31, 2008, meaning that Bailey & Glasser only had 29 days to file an action against VEPCO if the statute of limitations on that cause of action would have otherwise expired under applicable non-bankruptcy law. Based on this impending time limitation, Bailey & Glasser determined that the best course of action was to have its complaint filed before May 31, 2008. They filed the original complaint on behalf of the Debtor on May 23, 2008.

Also, this is not a case where the original complaint was filed against VEPCO without an investigation into the facts. The Debtor's bankruptcy case was originally filed under Chapter 11, and was administratively consolidated with the Chapter 11 case filed by Buffalo. While under Chapter 11, counsel for the unsecured creditor's committee, who now serves as counsel to the Chapter 7 trustee of Buffalo in its adversary proceeding against VEPCO for breach of contract, investigated the cause of action. The original complaint filed by the Debtor in this case is substantially similar to the earlier filed complaint by Buffalo against VEPCO. In addition, the Debtor's Chapter 7 trustee, an independent third party, was appointed to the case on September 10, 2007. The trustee has a statutory duty to investigate the financial affairs of the Debtor, 11 U.S.C. § 704(a)(4), and, as of April 8, 2008, he believed that his investigation warranted the filing of an application to hire Bailey

–5–

& Glasser "to represent the Trustee as lead counsel regarding the prosecution of claims the Debtor has against Virginia Electric and Power Company ("VEPCO") and arising out of VEPCO's breach and termination of the . . . supply agreement between VEPCO and Buffalo Company, Inc., dated October 24, 2005, of which the Debtor was a Guarantor." (Document No. 206).

Consequently, considering the substantial investigation of the dealings between VEPCO, the Debtor, and Buffalo that took place before the Trustee hired the law firm of Bailey & Glasser on May 2, 2008, and the possibility of causes of action lapsing if not filed before May 31, 2008, the court does not believe that Bailey & Glassers's statement that they filed the original complaint without first *fully* reviewing all the written records and interviewing the Debtor's principles, constitutes bad faith of the type that would prevent the court from considering the grant of the Debtor's request to amend its original complaint.

### 2.  Denial of Amendment for Failure to State a Claim

VEPCO asserts that the court should deny the Debtor's motion to amend the complaint against it to add a claim for tortious interference on the grounds that such a claim would only be dismissed by the court under Rule 12(b)(6). More specifically, VEPCO argues that: (a) the proposed amended complaint fails to properly plead its intent to interfere with the Debtor-Buffalo supply contract;[2] (b) the claim is barred by the applicable statute of limitations, and (c) the claim is barred on the grounds that it constitutes a compulsory counterclaim that was not raised in earlier litigation between VEPCO and the Debtor.

#### a.  Intent to Tortiously Interfere with Contract

VEPCO asserts that the Debtor's proposed count against it for tortious interference with contract fails to demonstrate how it could possibly benefit from interfering with the purported supply contract between the Debtor and Buffalo, and fails to alleges any conduct by it that was undertaken with the intent to interfere with that purported contract. As a result, VEPCO asserts that the

---

[2] VEPCO also asserts that no contract between the Debtor and Buffalo exists. Contrary to VEPCO's assertion, the Debtor's complaint alleges the existence of a contract, and alleges that Buffalo owed the Debtor $2.3 million on that contractual obligation. Because the court is required to take the allegations in the complaint as true when determining if a party has stated a claim on which relief may be granted, the court finds that the existence of a contract between the Debtor and Buffalo for the supply of coal is plausible inasmuch as the Debtor has alleged the existence of a contract, and pled facts supporting its conclusion. *Twombly*, 127 S. Ct. at 1965.

proposed count fails to state a claim.

The Restatement of the Law, Second, Torts, defines the contours of the tort of intentional interference with another's performance of his own contract:

> One who intentionally and improperly interferes with the performance of a contract (except a contract to marry) between another and a third person, by preventing the other from performing the contract or causing his performance to be more expensive or burdensome, is subject to liability to the other for the pecuniary loss resulting to him.

*Restatement (Second) Torts* § 766A (1979); *see also Spengler v. Sears*, 878 A.2d 628, 643 (Md. Ct. App. 2005) ("[T]he elements of tortious interference with business relationships are: (1) intentional and willful acts (2) calculated to cause damage to a plaintiff's lawful business that are (3) done with the unlawful and malicious purpose to cause damage, and that (4) cause actual damage.").[3]

Comment (e) to § 766A of the Restatement specifies the intent required to be shown before the defendant may be held liable for tortious interference of contract. It states that the interference is "intentional if the actor desires to bring it about or if he knows that the interference is certain or substantially certain to occur as a result of his action."

Regarding VEPCO's alleged intent to interfere with the Debtor's contract with Buffalo, the Debtor states in its proposed amended complaint:

> 56.   United Energy and Buffalo Coal had a contractual or business relationship or expectancy in the form of the United Energy-Buffalo Coal Contract . . . .
> 57.   VEPCO committed intentional acts of interference outside of that relationship or expectancy.
> 58.   . . . . [VEPCO's] misconduct was intentional, not negligent, and [VEPCO's] misconduct did not constitute legitimate competition. [VEPCO] had no financial interest in the induced party's business and no responsibility for another's welfare, and there were no other factors present to show that [VEPCO's] interference was proper. [VEPCO's] motives were improper and aimed at harming United Energy and Buffalo Coal for its own profit, as reflected by [VEPCO's] unlawful attempt to collect over $90 million in damages instead of performing under the contract.

Accordingly, under the proposed amended complaint, the Debtor is asserting that VEPCO intentionally breached the Second Supply Agreement with Buffalo. In the Debtor's view, VEPCO

---

[3] Both parties agree that Maryland law applies to the merits of Debtor's claim against VEPCO for tortious interference. (Document No. 44, p. 6 n.2).

–7–

did this for the purpose of intentionally interfering with the Debtor's secondary, but independent, coal supply agreement with Buffalo. VEPCO's alleged purpose for terminating the Second Supply Agreement with Buffalo – and interfering with the Debtor's contract with Buffalo – was so that VEPCO could assert a claim against Buffalo – and the Debtor as guarantor – for damages totaling about $90 million. This amount represents what VEPCO asserts is due from Buffalo's breach of the First Supply Agreement ($34 million), and what it claims is owed from termination of the Second Supply Agreement ($56 million). Of this amount, VEPCO is only asserting that the Debtor is liable for $56 million as a guarantor of the Second Supply Agreement.

The issue before the court at this initial pleading stage is whether the Debtor has stated a plausible claim for tortious interference – not whether that claim is probable. *Twombly*, 127 S. Ct. at 1965. Under Fed. R. Civ. P. 9(b), the Debtor is not required to allege intent with particularity, but may make allegations of intent generally. In support of its allegation of intent, the Debtor has alleged facts demonstrating a malicious intent by VEPCO inasmuch as it desired to terminate its relationship with Buffalo for the purpose of ending Buffalo's ability to perform under the purported contract between the Debtor and Buffalo. The ultimate goal, apparently, was to terminate the Debtor's and Buffalo's financial ability to operate and hold them accountable for damages. The Debtor has satisfied the pleading requirement to state a claim under Rule 12(b)(6).

### b. Statute of Limitations

VEPCO asserts that the Debtor's claim for tortious interference with contract is governed by West Virginia's two year statute of limitations. *See* W. Va. Code § 55-2-12 (general statute of limitations).[4] Arguing that the alleged wrong occurred in February 2006, VEPCO contends that the cause of action would be time barred under applicable nonbankruptcy law in February 2008. Considering that the Debtor filed bankruptcy on May 31, 2006, VEPCO concedes that under 11 U.S.C. § 108(a), the Debtor would have until May 31, 2008, to assert its claim against based on a tortious interference cause of action. VEPCO argues, however, that the claim for tortious interference in the proposed amended complaint – which was not proposed by the Debtor until July 17, 2008 – is too unrelated to the original complaint to allow the time of the filing of the amended

---

[4] VEPCO states that it agrees with the Debtor that West Virginia's statute of limitations controls the timeliness of the Debtor's claims. (Document No. 42, p. 13 n.6).

-8-

complaint to relate back to the date of the timely, May 23, 2008 original complaint.

An amended complaint will relate back to the filing of the original complaint when "the amendment asserts a claim . . . that arose out of the conduct, transaction, or occurrence set out – or attempted to be set out – in the original [complaint]." Fed. R. Civ. P. 15(c)(1)(b). Thus, "[i]f facts provable under the amended complaint arose out of the conduct alleged in the original complaint, relation back is mandatory." 3 *Moore's Federal Practice – Civil* § 15.19[2] (2008). On the other hand, when relation back defeats a statute of limitations and revives an otherwise stale claim, the court must be hesitant to curtail a legislative determination regarding the length of time a claim is viable. *Goodman v. PraxAir, Inc.*, 494 F.3d 458, 467-68 (4th Cir. 2007). As stated by the Court of Appeals for the Fourth Circuit, "Rule 15(c) must be understood to freely permit amendment of pleadings and their relation-back so long as the policies of statutes of limitations have been effectively served." *Id.* at 468. In general, this means that a court should consider whether the defendant had notice of the claim now being asserted, the same kind of evidence supporting the original claim supports the new claim, and whether the defendant would be unfairly surprised if the court allowed the amendment to relate back. 3 *Moore's Federal Practice – Civil* § 15.19[2] (2008).

Here, the Debtor is not seeking to amend its complaint to add a new party. It merely wishes to add an additional count against VEPCO, the only named defendant, for its alleged tortious interference with the Debtor's purported contract with Buffalo. In its original complaint, the Debtor made the following relevant allegations:

> 15.    [A]pproximately half of the Debtor's coal production was supplied to a power plant in Cumberland Maryland. The balance was supplied to other markets, including that of Buffalo Coal.
> . . . .
> 22.    . . . Buffalo Coal continued to supply coal to VEPCO and VEPCO continued to accept coal from Buffalo Coal pursuant to the [Second] Supply Agreement.
> 23.    Without any warning, on February 22, 2006, VEPCO attorney Karla Haslip sent to Buffalo Coal a letter terminating the [Second] Supply Contract . . . .
> . . . .
> 30.    As a result of VEPCO's February 2006 repudiation of the [Second] Supply Contract and Guaranty Agreement, the Debtor and Buffalo Coal could not continue to fund their operations . . . .
> . . . .
> 39.    . . . VEPCO's wrongful repudiation and material breach of the [Second] Supply Contract and Guaranty Agreement – which caused the cessation of the businesses of the Debtor and Buffalo Coal – entitles the Debtor to damages . . . .

Accordingly, in its original complaint, the Debtor made factual allegations to the effect that: (1) it had a coal supply agreement with Buffalo; (2) VEPCO interfered with the Debtor's contractual relations with Buffalo when VEPCO terminated the Second Supply Agreement, and (3) the termination caused the Debtor to cease is business operations because it could no longer sell coal to Buffalo. The amended complaint adds the further factual allegation that VEPCO's alleged interference with the Debtor's contract with Buffalo was intentional.

Based on the allegations set forth in the Debtor's original complaint, the court concludes that the Debtor's proposed amended complaint setting forth a claim for tortious interference relates back to the time of the filing of the original complaint under Rule 15(c). But for the allegation of intent, the facts necessary to support that claim were generally set forth in the original complaint. VEPCO had notice of the Debtor's additional cause of action for tortious interference because the basis for the Debtor's claim for damages in the original complaint – like the basis for the Debtor's tortious interference claim – was that VEPCO's termination of the Second Supply Agreement with Buffalo caused the cessation of the Debtor's business operations. *See generally Tiller v. Atlantic Coast Line R.R.,* 323 U.S. 574, 581 (1945) (allowing an amendment alleging additional facts constituting negligence to relate back since the original complaint notified the defendant that the plaintiff was trying to enforce a claim based on events leading up to a death in the defendant's yard).

Additionally, the statute of limitations on the tortious interference claim is alleged to have expired on May 31, 2008. The Debtor's assertion of the claim on July 17, 2008 is not so tardy, and is sufficiently related to the original complaint, that the policies embodied in the statute of limitations period are not transgressed. Given that VEPCO has been actively involved in the Debtor's bankruptcy proceeding, and has been investigating the relationships between itself, Buffalo, and the Debtor at least since it terminated the Second Supply Agreement in February 2006, the court does not believe that VEPCO is unfairly prejudiced by allowing the amended compliant to relate back to the time of the filing of the original complaint.

### c.   Compulsory Counterclaim

Before filing bankruptcy, both Buffalo and the Debtor were named defendants in a lawsuit commenced against them by VEPCO in the United States District Court for the Eastern District of Virginia claiming damages for Buffalo's alleged breach of the Second Supply Agreement. In that

-10-

action, only Buffalo – not the Debtor – filed a counterclaim against VEPCO. On April 19, 2006, the district court ordered that any amendments to the pleadings were to be filed within 15 days of entry of its order. The Debtor never filed a counterclaim within the time frame set forth in the district court's order, but it filed its bankruptcy petition on May 31, 2006. On August 16, 2006, the district court action was dismissed without prejudice by stipulation of the parties. Based on these facts, VEPCO contends that the Debtor is now barred from asserting a claim against it for tortious interference on the grounds that the claim would have been a compulsory counterclaim in the Virginia action and the Debtor did not file the counterclaim within the time set by the district court.

As a general matter, when a party files a pleading, the party "must state as a counterclaim any claim that – at the time of its service – the pleader has against an opposing party if the claim: (A) arises out of the same transaction or occurrence that is the subject matter of the opposing party's claim . . . ." Fed. R. Civ. P. 13(a)(1). The failure to raise such a compulsory counterclaim bars the assertion of that claim in any subsequent action. *E.g.*, *Painter v. Harvey*, 863 F.2d 329, 331-22 (4th Cir. 1988) (discussing when a counterclaim is compulsory).

Before Rule 13(a) can bar the assertion of a subsequent claim, however, a final judgment must be rendered in the previous suit. *Mann v. Haigh*, 120 F.3d 34, 36 (4th Cir. 1997) ("[T]he district court's earlier dismissal was made expressly without prejudice and, accordingly, has neither an issue nor a claim preclusive effect."); 3 *Moore's Federal Practice – Civil* § 13.14[1] (2008) ("A claim that should have been pleaded as a compulsory counterclaim in the first suit will only be barred in the subsequent action if a responsive pleading was required to be, or was served in the earlier action, and a final judgment was rendered in that suit."). Where the parties stipulate to a dismissal under Fed. R. Civ. P. 41(a)(1)(A)(ii), the stipulation terminates the action as if it were never filed, subject to the terms of the stipulation itself. *E.g.*, *United States v. Matthews (In re Matthews)*, 395 F.3d 477, 480 (4th Cir. 2005) ("[A] dismissal without prejudice 'operates to leave the parties as if no action had been brought at all.'") (citation omitted)*; Long v. Board of Pardons & Paroles*, 725 F.2d 306, 307 (5th Cir. 1984) (same).

Accordingly, because the lawsuit filed by VEPCO against the Debtor in the Eastern District of Virginia was voluntarily dismissed by the parties without prejudice, no *res judicata* effect is given to actions taken in that lawsuit. Consequently, VEPCO's argument that the Debtor should be barred from asserting a counterclaim against it in this adversary proceeding is based on the fact that the

Debtor failed to comply with a different court's order to assert that counterclaim by a date certain. Because that case was voluntarily dismissed without prejudice, the court does not believe that the Debtor's failure to comply with the order entered in the previous lawsuit prevents the Debtor from asserting its counterclaim in this lawsuit. After all, voluntary dismissal "leaves the parties as if no action had been brought at all." *Matthews*, 395 F.3d at 480.

Accordingly, the court will grant the Debtor's motion to file its amended complaint.

**B.   Motion to Dismiss Count I**

In Count One of its amended adversary complaint, the Debtor asserts VEPCO breached the Second Supply Agreement. The Debtor argues that its claim is proper on the basis that it is an intended third party beneficiary of the VEPCO-Buffalo contract, and, therefore, may bring a lawsuit against VEPCO in its own name. VEPCO disagrees with the Debtor's characterization of the Second Supply Agreement.[5] Both parties agree that the Debtor's status as a third party beneficiary is to be determined under Virginia law.[6]

In this case, the Debtor is not a named party to the Second Supply Agreement. As expressly stated in the opening paragraph, the Second Supply Agreement "is by and between [VEPCO] (hereinafter referred to as the "Buyer"), and [Buffalo] (hereinafter referred to as the "Seller")." To maintain a cause of action based on breach of contract, the moving party must be in privity; a non-party to the contract cannot sue for its breach to recover economic damages. *E.g.*, *BIS Computer Solutions, Inc. v. City of Richmond*, 122 Fed. Appx. 608, 609 (4th Cir. 2005) (holding that a non-party to a contract may not sue for its breach); *Radosevic v. Virginia Intermont College*, 651 F. Supp. 1037, 1038 (W.D. Va. 1987) ("Generally one not a party to a contract does not have standing to sue for breach of that contract."); *Copenhaver v. Rogers*, 384 S.E.2d 593, 595 (Va. 1989) ("It is settled in the Commonwealth that no cause of action exists in such cases absent privity of

---

[5] VEPCO also argues that Count I of the Debtor's complaint against it must be dismissed because the Debtor failed to raise it as a compulsory counterclaim in litigation between the parties in the Eastern District of Virginia. The court has already determined, however, that the Debtor's failure to assert a counterclaim in that case against VEPCO is of no effect because the parties stipulated to the dismissal of that case without prejudice.

[6] Both parties agree that Virginia law applies to the merits of Debtor's third-party beneficiary claim. (Document No. 44, p. 6 n.2).

-12-

contract."); *Thacker v. Hubard*, 94 S.E. 929, 931 (1918) ("[T]he action must be brought in the name of the party in whom the legal interest was vested . . . ."). While the Debtor was party to the secondary obligation created by the guaranty agreement, it was not a party to the primary contract. *E.g.*, 38 Am. Jur. 2d *Guaranty* § 119 (2008) (stating that the guarantor "cannot recover affirmatively on the debtor's claims"). Consequently, the Debtor has no ability to sue VEPCO for breach of the Second Supply Agreement as a direct party.[7]

An exception to the privity requirement allows one for whose benefit the contract was made to sue upon it. *Thacker*, 94 S.E. at 931. This exception is codified:

> An immediate estate or interest in or the benefit of a condition respecting any estate may be taken by a person under an instrument, although he be not a party thereto; and if a covenant or promise be made for the benefit, in whole or in part, of a person with whom it is not made, or with whom it is made jointly with others, such person, whether named in the instrument or not, may maintain in his own name any action thereon which he might maintain in case it had been made with him only and the consideration had moved from him to the party making such covenant or promise. In such action the covenantor or promisor shall be permitted to make all defenses he may have, not only against the covenantee or promisee, but against such beneficiary as well.

Va. Code § 55-22.

Thus, "[a] person may have a beneficial interest in a contract to which he is not a named party." *Horney v. Mason*, 35 S.E.2d 78, 80 (Va. 1945). The gravamen for recognizing a claim by such a third party beneficiary is "that others have agreed between themselves to bestow a benefit upon the third party but one of the parties to the agreement fails to uphold his portion of the bargain." *Copenhaver*, 384 S.E.2d at 596. The third party must show that the parties to the contract "clearly and definitely intended it to confer a benefit on him." *Ward v. Ernst & Young*, 435 S.E.2d

---

[7] It is axiomatic that the Debtor, as a guarantor, may raise as a defense to its guarantee obligation any defense that Buffalo, the principal obligor, has to the Second Supply Agreement. *E.g.*, *Restatement (Third) Suretyship & Guaranty* § 34 (1996). Nothing in the court's Memorandum Opinion or Order affects this defense. VEPCO contends that this defense is best raised as an objection to its proof of claim; however, given that the Debtor's complaint is also an objection to VEPCO's claim, and that the court has administratively consolidated this adversary proceeding with Buffalo's adversary proceeding against VEPCO for breach of contract, the court will allow the Debtor to litigate the issue in the context of this consolidated adversary proceeding.

-13-

628, 634 (Va. 1993). In other words, the third party beneficiary statute has no application "'unless the party sought to be held liable has assumed an obligation for the benefit of a third party. The statute does not purport to create a contract when no contract exists.'" *Professional Realty Corp. v. Walter*, 222 S.E.2d 810, 812 (Va. 1976) (citation omitted).

In addition, "[t]o come within the purview of [§ 55-22] it is insufficient for a person to show that incidental to the contract he would benefit from its enforcement." *In re County Green Ltd. Partnership*, 438 F. Supp. 693, 698 (W.D. Va. 1977); *see also Richmond Shopping Center, Inc. v. Wiley N. Jackson Co.*, 255 S.E.2d 518, 523 (Va. 1979) (incidental beneficiaries to a contract may not sue thereon). In this regard, Virginia law is consistent with contract law generally, and with the rules set forth in § 302 of the Restatement of the Law, Second, of Contracts.[8] *BIS Computer Solutions, Inc.*, 122 Fed. Appx. at 611. For example, the Restatement lists the following two illustrations as instances where the benefits received by a nonparty to the contract are incidental:

> 17. B contracts with A to buy a new car manufactured by C. C is an incidental beneficiary, even though the promise can only be performed if money is paid to C.
> . . . .
> 19. A contracts to erect a building for C. B then contracts with A to supply lumber needed for the building. C is an incidental beneficiary of B's promise, and B is an incidental beneficiary of C's promise to pay A for the building.

*Restatement (Second) Contracts* § 302 illus. 17, 19 (1981).

In this case, the Debtor asserts that it is an intended third party beneficiary to the Second

---

[8] In distinguishing between incidental and intended third party beneficiaries, the Restatement explains:
> (1) Unless otherwise agreed between promisor and promisee, a beneficiary of a promise is an intended beneficiary if recognition of a right to performance in the beneficiary is appropriate to effectuate the intention of the parties and either
>
> > (a) the performance of the promise will satisfy an obligation of the promisee to pay money to the beneficiary; or
> >
> > (b) the circumstances indicate that the promisee intends to give the beneficiary the benefit of the promised performance.
>
> (2) An incidental beneficiary is a beneficiary who is not an intended beneficiary.

*Restatement (Second) Contracts* § 302 (1981).

-14-

Supply Agreement on five grounds: (1) a draft of the Second Supply Agreement listed the Debtor as a party to the contract; (2) VEPCO requested that the Debtor serve as guarantor and explicitly referred to the Debtor in the Second Supply Agreement in three key places – the statement of performance assurances, Annex C-2, and Annex A;[9] (3) the Debtor actively supplied coal to Buffalo pursuant to the Second Supply Agreement, some of which was shipped directly to VEPCO; (4) the Debtor had dedicated coal reserves for VEPCO; and (5) VEPCO stated that it would not execute the Second Supply Agreement unless the Debtor agreed to be a guarantor. The benefit to the Debtor for agreeing to be the guarantor of the Second Supply Agreement "was the guaranteed sale of Coal to Buffalo for resale to VEPCO, which generated income for United Energy." (Document No. 28, p.

---

[9] The relevant portions of the Second Supply Agreement cited by the Debtor provide:
<u>7.1 Performance Assurance</u>
During the term of this Agreement and continuing thereafter until the obligations of [Buffalo] arising hereunder are fully and finally satisfied, [Buffalo] shall provide [VEPCO] with Performance Assurance to support the obligations of [Buffalo] under this Agreement. The Performance Assurance provided by [Buffalo] shall be a Guaranty from each of [Buffalo's] Guarantors, Barton Mining Company, Inc., and United Energy Coal, Inc., in the form attached as Annex C-1 and Annex C-2 attached hereto. . . .

. . . .
**ANNEX C– 2**
**GUARANTY AGREEMENT**
. . . .
**WHEREAS** . . . [VEPCO] has contracted with Buffalo Coal Company, Inc. . . . for a supply of coal . . . **WHEREAS** [Buffalo] and Guarantor are affiliated entities, both being held, directly or indirectly, under common control through ownership interests . . . **WHEREAS** Guarantor has agreed, as in inducement to [VEPCO's] agreement to enter the [Second Supply Agreement] with [Buffalo], to execute and deliver this Agreement to [VEPCO]: **NOW, THEREFORE, WITNESSETH** . . . 1. Guarantor unconditionally and irrevocably guarantees to [VEPCO] the proper, complete and punctual payment and performance of any and all the obligations of [Buffalo] . . . .

(Second Supply Agreement, p. 41, 73).
     Paragraph 2 of the Guaranty Agreement inadvertently refers to the Debtor as the "Seller" under the Second Supply Agreement. This reference, however, is a mere typographical error, and is plainly contrary to opening paragraph of the Second Supply Agreement where Buffalo is identified as the "Seller," and with the terms and content of the Guaranty Agreement itself.
     Annex A is a list of the Debtor's dedicated coal reserves under the Guaranty Agreement.

3-4). In sum, the Debtor contends that VEPCO knew and intended that the Debtor was going to supply coal to Buffalo for VEPCO's ultimate use, and get paid for it.

Contrary to the Debtor's arguments, and after construing all factual inferences in favor of the Debtor, the court can find no indication in the Second Supply Agreement that either VEPCO or Buffalo intended to confer a benefit on the Debtor as a third party beneficiary – much less find that they "clearly and definitely intended it to confer a benefit" on the Debtor. *Ward*, 435 S.E.2d at 634. While VEPCO and Buffalo may have contemplated making the Debtor a primary party to the Second Supply Agreement, that contemplation never solidified in the executed version of the Second Supply Agreement. Moreover, "Virginia law . . . indicates that the four corners of a contract evidence whether contracting parties clearly and definitely intended to directly benefit a third party." *Radosevic v. Virginia Intermont College*, 651 F. Supp. 1037, 1039 (W.D. Va. 1987). The Debtor has not presented the court with any basis to allow it to consider documents preparatory to the execution of the Second Supply Agreement.

In addition, none of the references to the Debtor in the Second Supply Agreement refer to the Debtor as anything but a guarantor of Buffalo's performance. The Second Supply Agreement does not require the Debtor to supply any coal to VEPCO except as provided in the guaranty agreement. VEPCO's statement that it would not execute the Second Supply Agreement without a guarantor only means that VEPCO wanted recourse against a third party should Buffalo fail to deliver on its obligations.

The opening recitals of the Second Supply Contract reflect the intent of Buffalo (the "Seller") and VEPCO (the "Buyer"):

> WHEREAS, Buyer owns and operates the Mt. Storm Power Station ("Station"), which is located in Grant County, West Virginia . . . ;and
> WHEREAS, Buyer desires to contract for a supply of coal for shipment to the Station . . . ; and
> WHEREAS, Seller owns, leases, or otherwise controls sufficient reserves of coal from which Seller can produce coal in the quantity and of the quality required by Buyer.
> NOW THEREFORE, in consideration of the covenants and premises herein set forth, Seller agrees to sell and deliver and Buyer agrees to purchase, accept, and pay for coal in the quantity, of the quality, during the period, at the Price and upon the other terms and conditions set forth herein.

These recitals simply fail to mention the Debtor. While VEPCO may have accepted coal shipped to it from the Debtor as constituting performance under the Second Supply Agreement by Buffalo, such actions were not contemplated in the Agreement without VEPCO's written consent.[10] All payments were to be made to Buffalo – not the Debtor – and the Debtor had no contractual rights on termination of the Second Supply Agreement.

Accordingly, based on the pleadings in this case and the terms of the Second Supply Contract, the court is certain that VEPCO and Buffalo Coal did not intend to benefit the Debtor by executing the Agreement such that the Debtor became an intended party beneficiary. Of course, the Debtor certainly benefitted from having a jointly controlled business execute a lucrative contract. But that benefit is only incidental. The Debtor had no obligation to supply coal to VEPCO (other than, perhaps, under the secondary obligations listed in the Guaranty Agreement), and no right to demand payment for that coal, based on the terms of the Second Supply Agreement. Consequently, the Debtor has no ability to sue for VEPCO's alleged breach of the Second Supply Agreement. *See, e.g.*, *BIS Computer Solutions, Inc.*, 122 Fed. Appx. 608 (refusing to find that BIS Computer Solutions was an intended third party beneficiary when it was a named subcontractor in the city's contract with the general contractor, and when the general contractor could not terminate BIS Computer Solutions without the consent of the city); *Food Lion, Inc. v. S. L. Nusbaum Ins. Agency, Inc.*, 202 F.3d 223 (4th Cir. 2000) (owner was not an intended third party beneficiary of a contract between a construction company and a third party to find performance bonds on the market that would be used to benefit the owner, even when obtaining performance bonds was a condition precedent to the contractor's performance); *Valley Landscape Co., Inc. v. Rolland*, 237 S.E.2d 120, 123 (Va. 1977) (contractor was not an intended third party beneficiary of the contract between the owner and his architect).

In sum, the factual allegations in the Debtor's amended complaint are insufficient to raise a right of relief above the speculative level that the Debtor was an intended third party beneficiary to the Second Supply Agreement. The Debtor's factual allegations simply fail to raise a reasonable

---

[10] The Second Supply Agreement designated the coal reserves out of which Buffalo could supply VEPCO. VEPCO asserts that those dedicated reserves did not include coal owned by the Debtor; rather, the dedicated reserves of the Debtor were only in connection with its guaranty agreement.

-17-

expectation of liability under the standards set forth in *Twombly*, 127 S. Ct. at 1965.

## IV. CONCLUSION

The court will grant the Debtor's motion to amend its original complaint. The court will grant VEPCO's motion to dismiss Count I of the amended complaint to the extent that the Debtor is asserting a cause of action against VEPCO under the Second Supply Agreement as an intended third party beneficiary. A separate order will be entered pursuant to Fed. R. Bankr. P. 9021.