Order Entered.

Patrick M. Flatley
United States Bankruptcy Judge
Dated: Friday, February 26, 2010 1:21:25 PM

# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE NORTHERN DISTRICT OF WEST VIRGINIA

| | | |
|---|---|---|
| IN RE: | ) | |
| | ) | |
| BUFFALO COAL CO., | ) | Case No. 06-366 |
| | ) | |
| Debtor. | ) | Chapter 7 |
| | ) | |
| | ) | |
| JOHN W. ("JACK") TEITZ, trustee of the | ) | |
| estate of BUFFALO COAL CO., | ) | |
| | ) | |
| Plaintiff, Counter-Defendant | ) | |
| | ) | |
| v. | ) | Adv. Proc. No. 08-38 |
| | ) | Administratively Consolidated with Adv. |
| | ) | Proc. No. 08-45. |
| VIRGINIA ELECTRIC POWER COMPANY, INC. | ) | |
| | ) | |
| Defendant, Counter-Claimant. | ) | |

## MEMORANDUM OPINION

Virginia Electric and Power Company, Inc., ("DVP") requests that this court prohibit Joseph Heller[1] from testifying at trial or presenting evidence on whether DVP's action in terminating a coal supply agreement with Buffalo Coal Company, Inc., was "commercially reasonable."  In DVP's view, Mr. Heller's proposed expert testimony and report are objectionable on the basis that the "commercially reasonable" standard is not applicable based on the facts of this case, and, moreover, even if the standard is applicable, the court is perfectly capable of applying the facts of this case to

---

[1] Joseph Heller is designated by the plaintiff as a coal industry expert.

the law without of Mr. Heller telling the court how it should rule on an ultimate issue at trial.

For the reasons stated herein, the court will grant DVP's motion in limine.

## I. BACKGROUND

Before February 2006, Buffalo Coal operated several surface and deep coal mines in northeastern West Virginia. Buffalo Coal's mines are in close proximity to DVP's Mount Storm power station, and Buffalo Coal sold almost all of its product to DVP pursuant to a series of coal supply agreements.

On February 22, 2006, DVP terminated its existing coal supply agreement with Buffalo Coal on the grounds that Buffalo Coal was insolvent and unable to pay its debts as they fell due. After receiving the termination notice, Buffalo Coal ceased its business operations. In an earlier summary judgment decision rendered by the court, it determined that Buffalo Coal was insolvent as that term was defined by the coal supply agreement, and that an event of default existed under the agreement. *Teitz v. Virginia Electric & Power Co., Inc. (In re Buffalo Coal Co., Inc.)*, 418 B.R. 878, 890 (Bankr. N.D.W. Va. 2009). The court also determined that genuine issues of material fact existed to preclude entry of summary judgment in DVP's favor on the issue of whether DVP properly terminated the coal supply agreement because DVP may have waived or been estopped from asserting Buffalo Coal's insolvency as an event of default. *Id.* at 891-92.

## II. DISCUSSION[2]

DVP asserts that it had an express contractual right to terminate its coal supply agreement with Buffalo Coal based on its insolvency. Under Virginia law, it contends, it cannot violate a duty of good faith or commercial reasonableness by exercising an express contractual right. On this basis, DVP argues that Mr. Heller's opinion as to whether DVP's termination of its coal supply agreement was commercially reasonable is not relevant.

The Trustee, at the February 18, 2010 hearing on DVP's Motion in Limine, asserted that Buffalo Coal's insolvency was not a material breach of the coal supply agreement, and, therefore, DVP should not have terminated the agreement because Buffalo Coal's insolvency did not go to the "root of the contract." In his post-hearing briefing, however, the Trustee fails to further articulate

---

[2] Both parties agree that Virginia law applies to the interpretation of the coal supply agreement.

-2-

this theory with respect to Mr. Heller's expert report and anticipated testimony. Instead, the Trustee asserts that DVP had discretion to declare Buffalo Coal's insolvency to be an event of default; consequently, because the declaration was a discretionary act, that discretion had to be exercised in good faith. In the Trustee's view, Mr. Heller's expert report and anticipated testimony is essential to helping the court understand why DVP exercised its discretion with a lack of good faith or was otherwise being commercially unreasonable.

**A.     Materiality**

The Trustee asserts that any non-consensual termination of a contract must be based on a material breach that goes to the "root of the contract." *Neely v. White*, 14 S.E.2d 337, 341 (1941). One factor a court may consider in making a materiality determination is "the extent to which the behavior of the party failing to perform or to offer to perform comports with standards of good faith and fair dealing." *Restatement (Second) Contracts* § 241(e) (1981); *see also RW Power Partners, L.P. v. Virginia Elec. & Power Co.*, 899 F. Supp. 1490, 1496-97 (E.D. Va. 1995) (recognizing § 241 of the *Restatement* as providing useful factors that a court may consider in identifying the materiality of a breach under Virginia law).

In this case, however, DVP's termination of the coal supply agreement was based on an express provision allowing DVP to terminate the agreement if Buffalo Coal became subject to a "Bankruptcy Proceeding," which the agreement defines as:

> Bankruptcy Proceeding – Shall mean with respect to a Party or entity, such Party or entity . . . (4) otherwise becomes bankrupt or insolvent (however evidenced) . . . or (6) is unable to pay its debts as they fall due.

(Article 1.1(c))

DVP's February 22, 2006 termination letter is based on the grounds that Buffalo Coal was insolvent and unable to pay its debts as they fell due. Because DVP was acting pursuant to an express contract right, it necessarily was acting in good faith under Virginia law. *E.g.*, *RW Power Partners, L.P.*, 899 F. Supp. at 1502-03 (holding that Virginia Electric and Power Co. wrongfully terminated a contract based on an immaterial breach (a delay in obtaining a letter of credit), but did not violate any duty of good faith because "strict adherence to the rights conferred by contracts constitutes neither bad faith nor a failure to deal fairly."); *Mahoney v. NationsBank*, 455 S.E.2d 5, 8 (1995) ("[W]hen parties to a contract create valid and binding rights, one party does not breach

−3−

the UCC's obligation of good faith by exercising such rights.").

Accordingly, as a matter of law, DVP cannot be found to have acted with a lack of good faith in terminating its coal supply agreement with Buffalo Coal, and Mr. Heller's expert report and anticipated testimony with regard to any good faith or commercial reasonableness element in determining the materiality of Buffalo Coal's breach of the coal supply agreement is not relevant.[3]

**B.    Discretionary Acts Exercised in Good Faith**

The Trustee asserts that DVP had the discretion under the coal supply agreement to declare Buffalo Coal's insolvency as an event of default,[4] and, because the act was discretionary, it had to be performed in good faith.

The case relied on by the Trustee, *Virginia Vermiculite, Ltd. v. W.R. Grace & Co.*, 156 F.3d 535 (4th Cir. 1998), however, adjudicated an entirely different type of contract. In that case, W.R. Grace had the "sole discretion" to decide whether to mine the owner's land for vermiculite. *Id.* at 541. The district court, applying Virginia law, held that W.R. Grace had no implicit contractual duty under state law to use good faith in exercising its discretion in determining whether to mine. *Id.* The Court of Appeals for the Fourth Circuit reversed, explaining that "it is a basic principle of contract law in Virginia . . . that although the duty of good faith does not prevent a party from exercising its explicit contractual *rights*, a party many not exercise contractual *discretion* in bad faith, even when such discretion is vested solely in that party." *Id.* at 542 (emphasis in original). The Fourth Circuit was expressly following an earlier Virginia decision on a nearly identical issue. In *Historic Green*

---

[3] In making this ruling, the court is not prohibiting the Trustee, at trial, from attempting to establish that Buffalo Coal's insolvency was an immaterial breach of its coal supply agreement with DVP. The court is only ruling that DVP's good or bad faith is not relevant to making that determination because DVP was acting according to an express contractual right.

At an earlier date, the court gave notice to the parties that it intended to consider certain trial exhibits in making a determination of whether Buffalo Coal's insolvency was a material breach of its coal supply agreement with DVP and it invited the parties to submit additional exhibits they wished the court to consider. Based on the court's legal conclusions regarding DVP's Motion in Limine, it is no longer necessary for the court to make that determination.

[4] Under § 9.2 of the Second Supply Agreement, a non-defaulting party "may, in its sole discretion, (i) accelerate and liquidate the Parties' respective obligations under this Agreement by establishing, and notifying the Defaulting Party of an Early Termination Date . . . ." Section 9.2 is plainly permissive

–4–

*Springs, Inc. v. Brandy Farm, Ltd.*, 32 Va. Cir. 98 (Louisa Cty. 1993), a landowner had likewise given W.R. Grace the "sole discretion" over whether to mine the property. The court in *Brandy Farm* stated that "[t]he implied duty of good faith is particularly important in the context of mining leases, where landowners must necessarily leave decision making processes to the expertise of mining companies." *Id.* at 102. Imposing a duty of good faith was necessary to help eliminate the significant "potential for abuse in such situations" and fulfilled the public policy concern that, "without such an implied duty of good faith to protect them, landowners would be unwilling to sign over control of their property to mining companies, and the utilization of mineral resources would be severely hampered as a result." *Id.* at 101-02.

Central to the holding of *Virginia Vermiculite* and *Brandy Farm* is the distinction between contractual rights and contractual discretion. A contract that gives a party the sole discretion to act or not act is imbued with a duty of good faith. On the other hand, numerous Virginia cases exist holding that when a party acts according to an express contractual right, the exercise of that right is not enervated by a duty of good faith. For example, in *Mahoney v. NationsBank*, 455 S.E.2d 5 (1995), the bank presented the borrower with minimum sale amounts under which the bank would agree to partial releases of its lien to allow the sale of individual parcels of real property that secured the bank's loan. When the real estate market experienced a downturn, the borrower was unable to obtain the minimum sales prices necessary to obtain the partial releases. After the bank sued to collect on the note, the borrower counterclaimed for a breach of the duty of good faith based on the bank's refusal to allow the partial releases of its lien according to the offers made for individual parcels of land by potential purchasers. The court held that the bank had contracted to obtain the right to refuse to grant any partial releases, and having obtained that contractual right, the bank could not have breached the obligation of good faith by exercising it.

Similarly, in *Charles E. Brauer Co. v. NationsBank of Virginia, N.A.*, 466 S.E.2d 382 (Va. 1996), the borrower defaulted on a note secured by, among other things, food inventory. The bank opted not to hold a foreclosure sale of the food inventory due to indemnification concerns, and instead proceeded to obtain a deficiency judgment against the borrower. The borrower argued that the amount of indebtedness to the bank would have been reduced had the bank agreed to a foreclosure sale of the food inventory, and its refusal to conduct such a sale was a contractual breach of its good faith obligations. More specifically, as the secured party, the bank had the "option to

–5–

foreclose, to reduce the claim to judgment, or to 'otherwise enforce the security interest by any available judicial procedure.'" (citation omitted). The bank exercised its right to reduce its claim to judgment instead of foreclosure, and because it was exercising a contractual right, it could not have violated any implied duty of good faith. *Id.*; *see also Riggs Nat'l Bank v. Linch*, 36 F.3d 370 (D.C. Cir. 1994) (holding that a when a party expressly contracts for the right to set the applicable rate of interest in its sole discretion, within certain limits, the party cannot have breached an implied obligation of good faith by exercising its discretion to set the interest rate); *Skillstorm, Inc. v. Elec. Data Sys.*, LLC., No. 1:09cv290, 2009 U.S. Dist. LEXIS 95056 at*23 (E.D. Va. Oct. 9, 2009) (dismissing a claim for breach of contract based on an implied duty of good faith when a party exercised its right to terminate a contract at will – the plaintiff "could not rely upon 'an implied duty of good faith and fair dealing to override explicit contract terms'") (citation omitted).

Of course, just because a party has a right to act under a contract based on the other party's non-performance does not mean that the party is obligated to undertake that act. Rights and obligations are different. Rights in favor of a non-breaching party are generally subject to waiver, and deciding whether to waive a right necessarily entails an act of discretion. For example, in *Mahoney*, the bank could have agreed to partially release its lien based on the offered sale prices for individual parcels of property, but chose not to. In *Charles E. Brauer Co.*, the bank had the discretion to approve a foreclosure sale but opted to reduce its claim to judgment instead. In neither *Mahoney* nor *Charles E. Brauer Co.*, did the court find the non-breaching party's decision to act in the manner chosen to be subject to a duty of good faith. Indeed, a finding that every decision to exercise a contractual right is imbued with an act of discretion that must be exercised in good faith would wholly eviscerate the holdings of cases like *Mahoney* and *Charles E. Brauer Co.*, that a party cannot act in bad faith by acting pursuant to an express contractual right.

In this case, DVP had the express contractual right to terminate its coal supply agreement with Buffalo Coal based on the occurrence of a "Bankruptcy Proceeding."[5] The coal supply

---

[5] The parties specifically negotiated the coal supply agreement and specifically included events of default that would give rise to a right of termination by the non-breaching party. In the court's earlier memorandum opinion, it determined that the coal supply agreement was not unconscionable and was negotiated by the parties with the assistance of counsel. *Teitz v. Virginia Electric & Power Co., Inc. (In re Buffalo Coal Co., Inc.)*, 418 B.R. 878, 890 (Bankr.

agreement in this case is not akin to the mining contracts at issue in *Virginia Vermiculite* and *Brandy Farms* because the coal supply agreement did not give DVP the sole discretion to perform or not perform under the agreement.  Buffalo Coal was not reliant on the good faith of DVP to perform the coal supply agreement because Buffalo Coal could compel DVP's performance or pursue its remedies so long as DVP did not properly invoke an event of default and terminate the agreement.  The terms of the active buy-sell coal supply agreement at stake in this case are not subject to the whim of one party such that a significant potential for abuse exists; nor do they implicate, in the view of the court, public policy concerns that would justify the imposition of good faith standards onto the decision of DVP to exercise its express termination rights.  Consequently, cases such as *Virginia Vermiculite* and *Brandy Farms* are distinguishable and inapplicable to this case.

This case is more akin to *Mahoney* and *Charles E. Brauer Co.*  In those cases, the non-breaching parties had an express contractual right to act. The non-breaching parties did not have to act in the manner that they did – they made the conscious choice to do so.  The discretion exercised by the non-breaching parties in those cases in choosing their course of action was no more or less than the discretion exercised by DVP in this case.  Accordingly, DVP's choice to exercise its contractual termination right cannot be altered by enervating the exercise of that right with a duty of good faith.  *E.g.*, *RW Power Partners, L.P.*, 899 F. Supp. at 1503 ("It is unnecessary to determine the effect of Virginia Power's alleged breach of the implied duties of good faith and fair dealing because the court does not find that Virginia Power acted in bad faith in attempting to cancel the contract. It was simply exercising what it believed to be rights reserved to it under the contract. Strict adherence to the rights conferred by contracts constitutes neither bad faith nor a failure to deal fairly.").

### III. CONCLUSION

For the above stated reasons, the court will grant DVP's Motion in Limine and exclude Mr. Heller's report, and anticipated trial testimony, regarding his belief that DVP's termination of the

---

N.D.W. Va. 2009).

coal supply agreement was not commercially reasonable.[6]  The court will enter a separate, interlocutory order granting the motion.

---

[6] Based on the court's determination to exclude Mr. Heller's expert report and testimony, the court need not address the alternate grounds for exclusion asserted by DVP that Mr. Heller was inappropriately testifying as to legal conclusions. *See, e.g., Snap-Drape, Inc. v. Commissioner*, 98 F.3d 194, 198 (5th Cir. 1996) (Rule 704(a) "does not allow an expert to render conclusions of law."); *Teague v. Bakker*, 35 F.3d 978, 993 n.21 (4th Cir. 1994) ("Expert testimony as to the proper interpretation of applicable domestic law is inadmissible."); *Aguilar v. International Longshoreman's Union, Local # 10*, 966 F.2d 443, 447 (9th Cir. 1992) ("[T]he reasonableness and foreseeability of the casual workers' reliance were matters of law for the court's determination. As such, they were inappropriate subjects for expert testimony.").

-8-